## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KORY PUTNEY, #313532                        *

               Plaintiff            *

      v.                                 *          Civil Action No.GLR-13-1837

R. LIKIN, et al.                            *

           Defendants           *

                       ***

### <u>MEMORANDUM OPINION</u>

Pending is Defendants' Motion to Dismiss or for Summary Judgment.  ECF No. 25. Plaintiff opposes the Motion and moves to file an Amended Complaint.[1]  ECF No. 29.  The Court determines that no hearing is necessary.  <u>See</u> Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff, an inmate confined to the custody of the Maryland Department of Public Safety and Correctional Services, states that at all times relevant to his Complaint he was confined at Western Correctional Institution ("WCI").[2]  Plaintiff was assigned to Housing Unit 4, A-tier on disciplinary segregation on June 28, 2011, when a major shakedown of the Unit occurred.

---

[1]  Plaintiff's Motion to Amend the Complaint seeks to add "background information" regarding an incident that occurred in November 2010.  ECF No. 29. The Motion shall be granted in light of Plaintiff's statement he does not seek to add this as a substantive claim.

[2]  Currently Plaintiff is incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland.  ECF No. 29.

During the search, he states multiple mattresses, including his, were confiscated due to damage done to the mattresses.  ECF No. 1 at p. 3.

Inmates from whom mattresses were taken were given the option of paying for the mattress or receiving a Notice of Infraction.  Plaintiff refused to pay and was given a Notice of Infraction.  Despite the fact that Plaintiff was found not guilty of the charges asserted at the disciplinary hearing on July 1, 2011, he was not provided with another mattress as were all other inmates.  Plaintiff alleges that, following his hearing, he asked Property Officer Wilson ("Wilson") for a replacement mattress.  Wilson informed Plaintiff that Likin did not want to provide him with a mattress and he was not "going to get [his] ass chewed off for going against Likin's orders."  ECF No. 1 at pp. 4- 5.  Plaintiff states that he asked virtually every officer who walked the tier for a mattress, but he suspects they too were warned by Likin not to provide him with a mattress.  Id. at p. 5.

Plaintiff claims that WCI utilizes Unit Managers which decentralizes authority, leaving issues regarding the housing unit to the discretion of the Unit Manager.  He further alleges that Likin was the Unit Manager and, as such, became the de facto Warden of that unit.  He alleges that Likin ordered a second Notice of Infraction be served on Plaintiff on July 6, 2011, after he was found not guilty.  Plaintiff states that at a hearing on July 11, 2011, all charges in the second notice of infraction were dismissed.  The not guilty verdict for the July 11, 2011 proceeding was affirmed by the Warden on July 21, 2011.  ECF No. 1 at p. 5.

On July 11 and 19, 2011, Plaintiff states he was seen by medical staff in response to a sick call request and claims he was denied treatment.  Plaintiff claims that both nurses with whom he spoke were aware of why he was requesting help.  Plaintiff alleges that both nurses

became hostile or negative toward him and left without providing treatment.  Plaintiff further alleges that he believes Likin influenced medical staff not to provide him with treatment  Id.

On July 28, 2011, Warden Morgan "decided that [Plaintiff] would not be issued another mattress until [Plaintiff] paid for the mattress that he had been found not guilty of damaging." ECF No. 1 at p. 6.   The following day, Plaintiff states that Morgan acknowledged his awareness that Plaintiff was found not culpable for damage to his mattress.  Id.  On June 28, 2011, Plaintiff submitted the issue of his mattress though the Administrative Remedy Procedure ("ARP").  The administrative response, dated July 28, 2011, states that Plaintiff's mattress was destroyed after staff retrieved contraband Plaintiff had hidden inside of it.  The ARP was dismissed as without merit.  ECF No. 1 at p. 18.

Plaintiff was again seen by medical staff for complaints of pain on July 26, 2011, and was then prescribed medication to address the pain including, Baclofen, Amitriptyline, Excedrin Migraine, and Ibuprofen.  Plaintiff complained of headaches, confusion, and pain in his neck along his spine and his right shoulder.  Plaintiff attributed the pain he experienced to being forced to sleep on hard concrete without a mattress.  ECF No. 1 at pp. 6 and 13 – 16.  Additionally, Plaintiff later complained of lower back pain due to the deprivation of a mattress.[3] Id. at p. 17.

Plaintiff alleges that during the time he was denied a mattress, his institutional mail was being diverted, delayed, or dismissed due to the method by which the housing units are managed. He claims Likin and Morgan signed routing slips for his requests for ARPs during this time, but he was unable to attach the slips as exhibits.  He states he requested a replacement mattress by

---

[3]   The medical record notes that Plaintiff does not appear to be in distress and that he should continue using Ibuprofen and muscle rub purchased through the commissary as well as performing light stretching activities, to address the pain. ECF 1 at p. 16.

writing to his Case Manager and Morgan on August 2, 2011, but never received a response.  ECF No. 1 at pp. 6 and 22 -28.

In addition to diversion of his institutional mail, Plaintiff claims his incoming and outgoing legal mail, was also being diverted or destroyed.  He claims much of his outgoing mail was returned or delayed; he states one letter from Prisoner Rights Information System of Maryland ("PRISM") took 17 days to receive.  ECF No. 1 at pp. 7 and 29.  Additionally, he provides a legal mail envelope that took two weeks to reach him.  Id.

On September 15, 2011, Plaintiff states an audit team was touring housing unit 4 at WCI and Plaintiff "yelled out" to the auditors in an attempt to obtain another mattress.  He alleges that the inmates were not warned that they could not speak to the auditors, but Likin punished him for contacting them by restricting Plaintiff's outdoor exercise for "much longer than three days,"  the maximum sanction authorized by applicable regulations.  ECF No. 1 at pp. 7 and 30.

Plaintiff appealed the Warden's denial of his ARP to the Commissioner of Correction on August 22, 2011, and states the appeal was denied because the Commissioner did not respond within the time required.  On November 1, 2011, Plaintiff received Commissioner Stouffer's response to the appeal which was signed on October 17, 2011.  The response required that a mattress be provided to Plaintiff, but when he showed the response to officers working in the housing unit none of them would comply with the directive.  ECF No. 1 at pp. 7 and 32.

On November 3, 2011, Plaintiff claims two Inmate Grievance Office ("IGO") representatives came to North Branch Correctional Institution ("NBCI") to investigate his grievance regarding the denial of a mattress.  The investigators required NBCI officials to provide Plaintiff with a mattress.  On December 6, 2011, Plaintiff had an IGO hearing concerning his complaint about being denied a mattress.  A decision issued on February 27,

2012, dismissed the complaint.  Plaintiff adds that all documents relating to the administrative remedy process were confiscated or mailed out to his mother, who never received them.  Plaintiff further claims that his attempts to retrieve documents from his prison base file have been thwarted by Morgan on two separate occasions.  ECF No. 1 at pp. 7 – 8.

Defendants do not dispute that Plaintiff did not have a mattress until November 3, 2011, but state that they were not made personally aware of this fact until the Commissioner's office directed them to provide a mattress.  Additionally, they assert that being without a mattress for approximately five months does not constitute cruel and unusual punishment in light of the fact that Plaintiff was provided with other bedding and did not suffer an injury.

With respect to Plaintiff's claims regarding mail, Defendants deny interfering with his mail and explain the procedure for sending and receiving mail prevents them from so doing. Defendants allege that even if Plaintiff's mail was delayed or otherwise misdirected, he has failed to show an actual injury.  Defendants also claim that Plaintiff has only made a vague claim regarding his mail and does not attribute the delays to any particular Defendant.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." <u>Bouchat</u>, 346 F.3d at 526 (internal quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

<u>Conditions Claim</u>

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u>  "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was objectively 'sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) (alteration in the original) (quoting <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be

called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"

Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded.  See Wilson v. Seiter, 501 U.S. 294, 297 (1991).  In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."  Brown v. N.C. Dept. of Corr., 612 F.3d 720, 723 (4th Cir. 2010), (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)) (internal quotation marks omitted).

The objective prong of a conditions claim requires proof of an injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).  Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions.  See Odom v. S.C. Dept. of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Plaintiff disputes Defendants' assertions that they were unaware he was without a mattress for five months.  This Court must accept as true allegations made by the non-moving party.  Given the number of complaints he lodged as well as the sick call slips he submitted stating that he was suffering physically from sleeping without a mattress; it is difficult to accept that none of the Defendants knew he was without a mattress.  There is also evidence that Plaintiff attempted to make an audit team aware of his circumstance and was punished for doing so.

Thus, the Court finds Defendants were aware that Plaintiff was without a mattress long after he was exonerated of disciplinary charges related to its destruction.   Defendants' awareness of Plaintiff's predicament, however, does not end the inquiry into whether the deprivation of a mattress violates his Eighth Amendment right.

In his Opposition Response Plaintiff maintains that he still suffers from back pain as a result of sleeping in a cell without a mattress.   Medical records indicate that Plaintiff was prescribed Baclofen,[4] Amitriptyline,[5] Ibuprofen, and Excedrin migraine on July 25, 2011.  ECF No. 25 at Ex. C, p. 7.  The same record, however, indicates that Plaintiff appeared to be in little to no distress.  There are no medical records documenting any continued problems with pain or discomfort during the following months when Plaintiff did not have a mattress.  Plaintiff claims that he continues to suffer pain from sleeping on a metal bunk without a mattress.  He does not, however, forecast evidence which would establish the injury claimed.   See ECF No. 29 at Declaration, p. 5.[6]  Thus, the asserted injury does not qualify as a significant physical injury for purposes of a constitutional claim and Defendants are entitled to summary judgment in their favor on the Eighth Amendment claim.

Mail Claim

---

[4] Baclofen is a muscle relaxer used to treat muscle symptoms including spasm, pain, and stiffness.  The side-effects of this medication include headache, confusion, drowsiness, and insomnia.  See http://www.drugs.com/baclofen.html.
[5] Amitriptyline is a tricyclic antidepressant that affects chemicals in the brain that may become unbalanced.  It is used to treat symptoms of depression.  The less serious side-effects of this medication include trouble concentrating, blurred vision, headache, diarrhea, loss of appetite, and nightmares.  See http://www.drugs.com/amitriptyline.html.
[6] Plaintiff states that, "I still suffer pain in my lower back from being deprived a mattress."  ECF No. 29 at Declaration, p. 6.  He provides no further details nor does he state what, if any, medication or treatment he requires for the pain he claims to currently suffer.  A bald allegation such as this is insufficient to establish an injury of constitutional injury.

Prisoners have a constitutionally protected right of access to the courts.  See Bounds v.

Smith, 430 U.S. 817, 821 (1977).  This constitutionally protected right does not, however,

> guarantee inmates the wherewithal to transform themselves into litigating engines
> capable of filing everything from shareholder derivative actions to slip-and-fall
> claims. The tools it requires to be provided are those that the inmates need in
> order to attack their sentences, directly or collaterally, and in order to challenge
> the conditions of their confinement. Impairment of any other litigating capacity is
> simply one of the incidental (and perfectly constitutional) consequences of
> conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of

access to the courts must show 'actual injury' to 'the capability of bringing contemplated

challenges to sentences or conditions of confinement before the courts.'"  O'Dell v. Netherland,

112 F.3d 773, 776 (4th Cir. 1997) (quoting Lewis, 518 U.S. at 355).  "The requirement that an

inmate alleging a violation of Bounds must show actual injury derives ultimately from the

doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks

assigned to the political branches."  Lewis, 518 U.S. at 349.  Actual injury occurs when a

prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial

of access to the courts.  Id. at 356.

In Christopher v. Harbury, the United States Supreme Court characterized access-to-the-

courts claims as being in one of two categories.  536 U.S. 403, 412-13 (2002).  "The first, termed

'forward looking claims,' are cases where official action frustrates a plaintiff's ability to bring a

suit at the present time."  Jennings v. City of Stillwater, 383 F.3d 1199, 1208 (10th Cir. 2004).

The second category, termed "backward looking claims," arise when a plaintiff alleges that a

specific claim "cannot be tried (or tried with all the evidence) [because past official action]

caused the loss or inadequate settlement of a meritorious case."  Id. (quoting Harbury, 536 U.S.

at 414.  In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts.  Id. (alteration in the original) (quoting Christopher, 536 U.S. at 415) (internal quotation marks omitted).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim.  Conclusory allegations are not sufficient in this regard.  See Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006) (denying plaintiffs claim that he was denied access to the courts for lack of actual injury). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  Christopher, 536 U.S. at 415.

Plaintiff claims his institutional mail was being diverted, delayed, or dismissed during the time he was deprived of a mattress.  ECF No. 1 at p. 6.  In his Opposition Response, Plaintiff clarifies that the only mail that was affected during this time was incoming and outgoing mail concerning the violation of his rights, which prolonged the period of time during which he was deprived of a mattress.  ECF No. 29 at Memorandum, p. 6.  He further states that he never alleged any mishandling of administrative remedy requests or other requests.  Id.  Plaintiff states he mailed two envelopes to his mother containing documents to be copied in preparation for the instant case on December 6, 2011, which never made it to his mother.  Id. at p. 8.  Specifically, Plaintiff states the following items were mailed to his mother:[7]

> Notice of Confiscation form, dated June 28, 2011; DOC policy (DCD); ticked dated June 28; page 3 Inmate Hearing Record dated July 1, 2011; WCI policy ticket dated July 6, 2011; Hearing Decision Review, dated July 29, 2011; Routing Forms, dated 2010 and 2011; many envelopes containing the order

---

[7] The Court notes that outgoing mail to a private party, Plaintiff's mother, is not technically legal mail.

that I be provided a mattress without payment of restitution, and I forget what
else.

Id.  The absence of the listed documents from the record in this case have not adversely impacted the outcome, nor did the alleged misdirection of Plaintiff's mail cause him to miss a crucial deadline.  As noted, absent a showing of an actual injury Plaintiff's claim that he was denied meaningful access to the court must fail.

Having found no evidence of a cognizable constitutional injury on the record, Defendants are entitled to summary judgment in their favor.  A separate Order follows.

May 14, 2014

/s/

_____
George L. Russell, III
United States District Judge